UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID M. LANZET, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VICAL INCORPORATED, VIJAY B. SAMANT, ROBER C. MERTON, R. GORDON DOUGLAS, RICHARD M. BELESON, GEORGE J. MORROW, GARY A. LYONS, and THOMAS E. SHENK,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David M. Lanzet ("Plaintiff"), by his undersigned counsel, on behalf of himself and all others similarly situated, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff, on behalf of himself and all other similarly situated public stockholders of Vical Incorporated ("Vical" or the "Company") against the above-captioned Defendants, including Vical and the members of the Company's Board of Directors (referred to as the "Board" or the "Individual Defendants," and, together with Vical, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the

proposed merger ("Proposed Transaction") under which Vical will be acquired by Brickell Biotech, Inc. ("Brickell").

2. On June 2, 2019, Vical, Brickell, and Victory Subsidiary, Inc., a wholly owned subsidiary of Vical ("Merger Sub") entered into an Agreement and Plan of Merger ("Merger Agreement").

3. Pursuant to the Merger Agreement, Merger Sub, a wholly owned subsidiary of Vical formed in connection with the Proposed Transaction, will merge with and into Brickell, with Brickell surviving as a wholly owned subsidiary of Vical.

4. On July 12, 2019, in order to convince Vical's public common stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading proxy statement (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. As stated in the Proxy, following consummation of the Proposed Transaction, Vical stockholders will own 40% of the combined company and Brickell shareholders will own 60% of the combined company (the "Merger Consideration").

6. The Proxy contains materially incomplete and misleading information concerning (a) financial projections for the Company and Brickell; (b) the valuation analyses prepared by MTS Health Partners, L.P.'s ("MTS"), in support of its fairness opinion; (c) potential conflicts of interest faced by MTS; and (d) the background process leading up to the Proposed Transaction.

7. In addition, the Proxy disclosed that a special meeting of Vical's stockholders will be held on August 30, 2019 to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is

disclosed prior to the Stockholder Vote so Vical stockholders can properly exercise their corporate voting rights.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

11. Plaintiff is, and has been, at all times relevant times, A Vical stockholder.

12. Defendant Vical is a Delaware corporation and maintains its principal executive offices at 10390 Pacific Center Court, San Diego, California 92121. Vical's common stock is traded on the NASDAQ Capital Market under the ticker symbol "VICL."

13. Defendant Vijay B. Samant is Chief Executive Officer, President, and a director of Vical.

14. Defendant Robert C. Merton is a director of Vical.

15. Defendant R. Gordon Douglas is Chairman of the Board of Vical.

16. Defendant Richard M. Beleson is a director of Vical.

17. Defendant George J. Morrow is a director of Vical.

18. Defendant Gary A. Lyons is a director of Vical.

19. Defendant Thomas E. Shenk is a director of Vical.

20. The defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## OTHER RELEVANT ENTITIES

21. Brickell is a Delaware corporation based in Boulder, Colorado. Brickell is focused on developing prescription therapeutics for the treatment of debilitating skin diseases.

22. Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Vical.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the other public stockholders of Vical (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24. This action is properly maintainable as a class action because:

(a) the Class is so numerous that joinder of all members is impracticable. As of June 2, 2019, there were 22,822,716 shares of Vical common stock outstanding, held

    by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of the Company will be ascertained through discovery;

(b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy, in violation of Section 14(a) of the Exchange Act; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

25. Vical is a company historically focused on research and development of biopharmaceutical products for prevention and treatment of chronic or life-threatening infectious diseases, including antiviral and antifungal candidates in clinical development.

26. Brickell is a clinical-stage pharmaceutical company focused on developing innovative and differentiated prescription therapeutics for treatment of skin diseases. The company's pipeline consists of potential novel therapeutics for hyperhidrosis, cutaneous T-cell lymphoma, psoriasis, and other prevalent severe skin diseases.

**The Proposed Transaction**

27. On June 3, 2019, the Company and Brickell issued a joint press release announcing the Proposed Transaction. The press releases stated in relevant part:

**Vical and Brickell Announce Merger Agreement**

- *Combined Company Well-Capitalized with Approximately $35 Million in Cash and up to $25 Million in Near-Term R&D Funding*

- *Pivotal Phase 3 Clinical Trials for Brickell's Lead Product Candidate, Sofpironium Bromide, in Patients with Axillary Hyperhidrosis Planned for Q4 2019*

- *Companies to Host Conference Call/Webcast at 8:30 a.m., Eastern Time, Monday June 3, 2019*

SAN DIEGO, CA and BOULDER, CO — June 3, 2019 — Vical Incorporated ("Vical") (Nasdaq:VICL) and Brickell Biotech, Inc. ("Brickell"), a privately-held clinical-stage medical dermatology company, today announced they entered into a definitive merger agreement (the "Merger") under which Brickell would merge with a wholly-owned subsidiary of Vical in an all-stock transaction. The Merger would create a pharmaceutical company focused on developing novel and differentiated prescription therapies addressing unmet patient needs in hyperhidrosis, cutaneous T-cell lymphoma, psoriasis, and other debilitating dermatologic disorders. Brickell's lead pipeline asset, sofpironium bromide, is a pivotal Phase 3-ready topical soft anticholinergic intended for axillary

hyperhidrosis. Brickell's development partner, Kaken Pharmaceutical, Co, LTD ("Kaken"), has reported positive Phase 3 results in a clinical trial conducted in Japan. Upon closing of the transaction, the combined company would operate under the name, Brickell Biotech, Inc. and trade on the Nasdaq Capital Market under a new ticker symbol still to be determined.

**Proposed Transaction Details**

Under the terms of the Merger, it is anticipated that existing Vical stockholders will own 40% of the combined company and Brickell stockholders will own 60% of the combined company, in each case upon completion of the Merger and subject to assumptions regarding the calculation of the fully diluted shares of the parties. The ownership split is based on a $60 million valuation for Brickell and a $40 million valuation for Vical, a premium to the 30-day volume weighted average share price of Vical. The actual allocation between the two groups of stockholders is subject to adjustment based on Vical's and Brickell's respective net cash and net working capital balances prior to the completion of the Merger. The transaction has been approved by the boards of directors of both companies and the required percentage of stockholders of Brickell needed to approve the transaction. The Merger is anticipated to close in the third quarter of 2019, subject to customary closing conditions, including approval of the Merger by the stockholders of Vical, and the satisfaction of the closing conditions to the Funding Agreement (described below).

"Following an extensive review of many strategic alternatives, we decided that the proposed Merger with Brickell provides the best opportunity for Vical's stockholders," said Vijay B. Samant, President and Chief Executive Officer of Vical. "We believe that Brickell's lead compound, sofpironium bromide, based upon all of the clinical data generated to-date, has the potential to be a best-in-class treatment for axillary hyperhidrosis. We are optimistic that the strength of the Brickell executive leadership team, which has experience launching several drugs with other pharmaceutical companies, coupled with an innovative pipeline of new chemical entities for impactful skin diseases, will enable the combined company to reach significant value inflection points."

An affiliate of NovaQuest Capital Management, LLC ("NovaQuest") has committed up to $25 million in near-term research and development funding to Brickell following the closing of the Merger (the "Funding Agreement"). Immediately following the closing of the Funding Agreement, the combined company will issue a warrant to NovaQuest to purchase shares of Vical common stock in an amount based on 10% warrant coverage on the $25 million funding commitment and the exchange ratio for the Merger. The combined company intends to use proceeds from NovaQuest, in addition to Vical's cash balance expected to be approximately $35 million at the closing of the Merger, to primarily fund the development of sofpironium bromide through Phase 3 clinical trials in axillary hyperhidrosis.

"We are excited about the opportunities created by this Merger as we expect it to provide us with the funding to complete our two planned pivotal Phase 3 trials of sofpironium bromide in patients axillary hyperhidrosis, with topline data expected in Q4 2020," explained Robert B. Brown, Chief Executive Officer of Brickell. "In addition, the strong closing balance sheet would allow Brickell to further develop our key pipeline assets for the treatment of other skin diseases."

For this transaction: MTS Health Partners, L.P. served as financial advisor, and Cooley LLP served as legal counsel to Vical, and BMO Capital Markets served as financial advisor, and Mayer Brown LLP served as legal counsel to Brickell. Wyrick Robbins Yates & Ponton LLP served as legal counsel to NovaQuest.

**Management and Board of Directors**

Following the Merger, the combined company will be led by the current Brickell management team, including, Robert Brown as Chief Executive Officer, Andy Sklawer, Co-Founder and Chief Operating Officer, Deepak Chadha, Chief R&D Officer, R. Michael Carruthers, Chief Financial Officer, Gary Walker, Chief Marketing Officer, and David McAvoy, General Counsel. The corporate headquarters will be located in Boulder, Colorado.

The board of directors of the combined company will be comprised of seven directors, including five current directors of Brickell: Reginald Hardy, Chairman, Robert Brown, Dennison Veru, Dr. William Ju and George Abercrombie, and two current directors of Vical. Charles Stiefel will serve as the Chairman of the combined company's Dermatology Advisory Board.

28. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

29. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

**The Merger Agreement**

30. Section 4.4 of the Merger Agreement provides for a "no solicitation" clause that prevents Vical from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

8

4.4 **Parent Non-Solicitation**.

(a) Parent agrees that, during the Pre-Closing Period, it shall not, and shall not authorize any of its Representatives to, directly or indirectly: (i) solicit, initiate or knowingly encourage, induce or facilitate the communication, making, submission or announcement of any Acquisition Proposal or Acquisition Inquiry or take any action that could reasonably be expected to lead to an Acquisition Proposal or Acquisition Inquiry; (ii) furnish any non-public information regarding Parent to any Person in connection with or in response to an Acquisition Proposal or Acquisition Inquiry; (iii) engage in discussions (other than to inform any Person of the existence of the provisions in this Section 4.4) or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry; (iv) approve, endorse or recommend any Acquisition Proposal (subject to Section 5.3); (v) execute or enter into any letter of intent or any Contract contemplating or otherwise relating to any Acquisition Transaction (other than a confidentiality agreement permitted under this Section 4.4); or (vi) publicly propose to do any of the foregoing; *provided*, *however*, that, notwithstanding anything contained in this Section 4.4 and subject to compliance with this Section 4.4, prior to obtaining the Required Parent Stockholder Vote, Parent may furnish non-public information regarding Parent to, and enter into discussions or negotiations with, any Person in response to a *bona fide* Acquisition Proposal by such Person, which the Parent Board determines in good faith, after consultation with Parent's outside financial advisors and outside legal counsel, constitutes, or could be reasonably likely to result in, a Superior Offer (and is not withdrawn) if: (A) neither Parent nor any of its Representatives shall have breached this Section 4.4 in any material respect, (B) the Parent Board concludes in good faith based on the advice of outside legal counsel, that the failure to take such action could be reasonably likely to be inconsistent with the fiduciary duties of the Parent Board under applicable Law; (C) Parent receives from such Person an executed confidentiality agreement containing provisions, in the aggregate, at least as favorable to Parent as those contained in the Confidentiality Agreement;  and (D) substantially contemporaneously with furnishing any such nonpublic information to such Person, Parent furnishes such nonpublic information to the Company (to the extent such information has not been previously furnished by Parent to the Company). Without limiting the generality of the foregoing, Parent acknowledges and agrees that, in the event any Representative of Parent (whether or not such Representative is purporting to act on behalf of Parent) takes any action that, if taken by Parent, would constitute a breach of this Section 4.4, the taking of such action by such Representative shall be deemed to constitute a breach of this Section 4.4 by Parent for purposes of this Agreement.

(b) If Parent or any Representative of Parent receives an Acquisition Proposal or Acquisition Inquiry at any time during the Pre-Closing Period, then Parent shall promptly (and in no event later than one Business Day after Parent becomes aware of such Acquisition Proposal or Acquisition Inquiry) advise the Company orally and in writing of such Acquisition Proposal or Acquisition Inquiry (including the identity of the Person making or submitting such Acquisition Proposal or

Acquisition Inquiry, and the material terms thereof). Parent shall keep the Company reasonably informed with respect to the status and material terms of any such Acquisition Proposal or Acquisition Inquiry and any material modification or proposed material modification thereto.

(c) Parent shall immediately cease and cause to be terminated any existing discussions, negotiations and communications with any Person that relate to any Acquisition Proposal or Acquisition Inquiry that has not already been terminated as of the date of this Agreement and request the destruction or return of any nonpublic information of Parent provided to such Person.

31. In addition, Section 9.3(c) of the Merger Agreement requires Vical to pay a $1,000,000 "termination fee" to Brickell in the event this agreement is terminated by Vical and improperly constrains Vical from obtaining a superior offer.

**The Materially Incomplete and Misleading Proxy**

32. On July 12, 2019, Defendants filed an incomplete and misleading Proxy with the SEC and disseminated it to the Company's stockholders. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for August 30, 2019.

33. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

*Material Omissions Concerning Financial Projections*

34. The Proxy is materially deficient because it fails to disclose material information relating to Vical and Brickell's intrinsic value and prospects going forward.

35. First, the Proxy omits entirely Vical's financial projections.

36. With respect to Brickell's financial projections, the Proxy fails to disclose, for each set of projections: (i) all line items used to calculate gross profit; and (ii) all line items used to calculate operating income.

10

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

***Material Omissions Concerning MTS's Financial Analyses***

38. The Proxy describes the fairness opinion of the Company's financial advisor, MTS, and the various valuation analyses each performed in support of its opinion. However, the description of MTS's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, the Company's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MTS's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's common stockholders.

39. With respect to MTS's *Discounted Cash Flow* analysis, the Proxy fails to disclose: (i) Brickell's net operating losses; (ii) the individual inputs and assumptions underlying the range of discount rates of 12% to 14%; (iii) MTS's basis for applying revenue achievement factors of 75% to 125% and United States probabilities of success of 60% to 80%; and (iv) Brickell's projected capitalization at closing. This information must be disclosed to make the Proxy not materially misleading to Vical stockholders.

40. With respect to MTS's *Public Trading Comparable Companies* analysis, the Proxy fails to disclose: (i) the individual multiples and metrics for the companies observed by MTS in the analysis; (ii) which set of projections MTS relied upon; and (iii) net debt, preferred

11

stock, and minority interest. This information must be disclosed to make the Proxy not materially misleading to Vical stockholders.

41. With respect to MTS's *IPO Comparables Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by MTS in the analysis; (ii) which set of projections MTS relied upon; and (iii) net debt, preferred stock, and minority interest.

42. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

***Material Omissions Concerning MTS's Potential Conflicts of Interest***

43. The Proxy provides:

> As permitted by the terms of the engagement letter and pursuant to MTS's internal policies, MTS Securities rather than MTS, delivered the MTS Opinion. As compensation for MTS Securities' and its affiliates' financial advisory services, Vical paid a non-refundable retainer fee of $100,000 and paid a fee of $300,000 to MTS Securities for rendering the MTS Opinion in connection with the Vical board of directors' consideration of the proposed transaction with Brickell, which fee was not contingent upon the successful completion of the Merger or the conclusion reached within the MTS Opinion. Upon consummation of the Merger, Vical will be obligated to pay to MTS a transaction fee equal to approximately $2,000,000, of which up to $500,000 of such fee may be payable in shares of the combined company's common stock based upon the closing price of Vical common stock on the day of the consummation of the Merger.

Proxy at 89. The Proxy, however, fails to disclose the circumstances under which $500,000 of MTS's fee may be payable in shares of the combined company's common stock, as well as the details with respect to such payment.

44. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

*Material Omissions Concerning Insiders' Conflicts of Interest*

45. The Proxy fails to disclose material information concerning potential conflicts of interest faced by the Board.

46. According to the June 3, 2019 joint press release two current Vical directors will serve on the board of the combined company. The Proxy discloses that these directors are Vical CEO Vijay Samant and Gary Lyons. However, the Proxy fails to disclose the timing and nature of any communications regarding the retention of defendants Samant and Lyons, including who participated in such communications and when Brickell first expressed its interest in retaining members of Vical's Board.

47. Communications regarding the potential for Board members to sit on the combined company's board of directors during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48. The omission of the above-referenced material information renders the Proxy false and misleading, including, *inter alia*, the following sections of the Proxy: (i) Background of the Merger; (ii) Reasons for the Merger; (iii) Certain Vical Management Unaudited Prospective

13

Financial Information; (iv) Opinion of MTS Securities, LLC; and (v) Interests of the Vical Directors and Executive Officers in the Merger.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Vical's stockholders.

## COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53. Defendants have issued the Proxy with the intention of soliciting support of stockholders for the Proposed Transaction. Each Defendant reviewed and authorized the

14

dissemination of the Proxy, which fails to provide critical information detailed above.

54. In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted material information but failed to disclose such information, in violation of Section 14(a). Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55. The Proxy is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

56. Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57. Defendants violated securities laws in preparing and reviewing the Proxy. Defendants chose to omit material information from the Proxy or failed to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

58. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other stockholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the

Proposed Transaction.

59. Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

64. In addition, as set forth in the Proxy sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

67. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholder be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A) ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

(B)     declaring that the Proxy is materially false and/or misleading;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(E)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: August 12, 2019

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*

Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff and the Classes*